UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIMINAL NO. 17-CR-40010-TSH |
| | ) |
| v. | ) VIOLATION(S) |
| | ) |
| KEVIN A. PERRY, JR. | ) 18 U.S.C. § 1956(a)(1)(B)(i) – |
| | ) Money Laundering |
| Defendant. | ) |
| | ) 31 U.S.C. § 5324; 18 U.S.C. § 2 – |
| | ) Unlawful Cash Structuring; |
| | ) Aiding and Abetting |
| | ) |
| | ) 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi)– |
| | ) Distribution of Fentanyl |
| | ) |
| | ) 18 U.S.C. § 1014 – |
| | ) False Statement on Loan Application |
| | ) |
| | ) Forfeiture Allegations |
| | ) 18 U.S.C. § 982(a)(1) – Money Laundering Forfeiture |
| | ) 21 U.S.C. § 853 – Drug Forfeiture |
| | ) 31 U.S.C. § 5317(c)(1) – Structuring Forfeiture |
| | ) 18 U.S.C. § 982(a)(2) – False Statement Forfeiture |

**INDICTMENT**

The Grand Jury charges that:

**Allegations Relevant to Money Laundering and Unlawful Cash Structuring Charges**

1.   In or about January 2005, defendant Kevin A. Perry, Jr. ("defendant" or "Perry") was convicted in the United States District Court in the District of Massachusetts for conspiracy to manufacture, possess with intent to distribute, and to distribute a controlled substance.

2.   As a result of that conviction, the defendant was sentenced to a term of incarceration. In addition, on September 20, 2005, the district court ordered the defendant's forfeiture of certain property, including real property and several vehicles. On October 12, 2005,

the defendant filed an Affidavit of Indigency in which he swore under the pains and penalties of perjury that he possessed nothing of monetary value.

3. At some later point, in or about 2006-2007, the defendant asserted to a person known to this grand jury that he (the defendant) successfully concealed "millions of dollars" constituting proceeds from his illegal drug operation from the federal government.

4. The defendant was released from custody in or about September 2008 and placed on supervised release until September 2014. During that six-year period, the only employment that the defendant reported to the United States Probation Office and to the Internal Revenue Service was as a fitness trainer earning approximately $4,800 per month.

5. From his release in 2008 through February 2017, the defendant engaged in the unlawful manufacture and/or distribution of controlled substances, including anabolic steroids, cocaine, and fentanyl.

### Secondwind Investments, LLC and Deposit of $92,000

6. On November 10, 2011, the defendant filed Articles of Organization for Secondwind Investments, LLC ("Secondwind") with the Massachusetts Secretary of State's office. The defendant was listed as the only officer of Secondwind in that filing.

7. On November 16, 2011, the defendant deposited a cashier's check from Putnam Bank for approximately $92,020 into two accounts that he opened in the name of Secondwind that same day.

8. The funds used to purchase the Putnam Bank cashier's check were withdrawn from the client account of Law Firm A, located in Danielson, Connecticut. The relevant funds were transferred to Law Firm A's client account by five separate wire transfers occurring between October 25, 2011 and November 10, 2011.

**Defendant's Purchase of Nine Properties in Worcester County**

9. On or about June 4, 2012, Secondwind purchased 38 Woodford Street, Worcester, Massachusetts for $355,000. To purchase the property, the defendant obtained a mortgage of $270,750. In addition, the defendant paid a deposit of $17,750 and made a further payment of approximately $57,810 on or before June 4, 2012 in order to close on the real estate purchase.

10. On October 11, 2013, the defendant purchased Unit 6 at 50 Gibbs Street, Worcester, Massachusetts for $80,000. To purchase the property, the defendant obtained a mortgage of $60,000. In addition, the defendant paid a deposit of $5,000 and a further payment of approximately $18,551 on or before October 11, 2013 in order to close on the real estate purchase.

11. On October 11, 2013, the defendant also purchased Unit S-1 at 25 Andover Street, Worcester, Massachusetts for $95,000. To purchase the property, the defendant obtained a mortgage of $90,250. In addition, the defendant paid a deposit of $4,750 and a further payment of approximately $3,037 on or before October 11, 2013 in order to close on the real estate purchase.

12. On April 14, 2014, the defendant purchased 193 Hamilton Street, Worcester, Massachusetts for $206,140. To purchase the property, the defendant obtained a mortgage of $154,605. In addition, the defendant paid a deposit of $5,000 and a further payment of approximately $48,329 on or before April 14, 2014 in order to close on the real estate purchase.

13. On July 28, 2014, the defendant purchased 119 Heywood Street, Worcester, Massachusetts for $166,000. To purchase the property, the defendant obtained a mortgage of $120,000. The defendant paid a deposit of $4,980, and made a further payment of approximately $51,382 on or before July 28, 2014 in order to close on the real estate purchase.

14. On or about February 16, 2016, Secondwind purchased 56 Copperfield Road, Worcester, Massachusetts for $100,000. To purchase the property, the defendant obtained a mortgage of $60,000. In addition, the defendant paid a deposit of $6,000, and made an additional payment of approximately $36,073 on or before February 16, 2016 in order to close on the real estate purchase.

15. On February 19, 2016, the defendant and his wife purchased 104 McCracken Road, Worcester, Massachusetts for $325,000. To purchase the property, the defendant obtained a mortgage of $225,000. In addition, the defendant paid a deposit of $15,000, and made an additional payment of approximately $87,902 on or before February 19, 2016 in order to close on the real estate purchase.

16. On April 12, 2016, the defendant filed a Certificate of Organization for 166 Shrewsbury Street, LLC with the Massachusetts Secretary of State's office. The defendant was the only officer identified on that filing.

17. On September 19, 2016, 166 Shrewsbury Street, LLC purchased 166 Shrewsbury Street, Worcester, Massachusetts for $500,000. To purchase the property, the defendant obtained a mortgage of $375,000. In addition, the defendant paid a deposit of $25,000, and made a further payment of approximately $105,075 on or before September 19, 2016 in order to close on the real estate purchase.

18. On May 17, 2016, the defendant filed a Certificate of Organization for 81 Water Street, LLC with the Massachusetts Secretary of State's office. The defendant was the only officer identified on that filing.

19. On October 24, 2016, 81 Water Street, LLC purchased 81 Water Street, Worcester, Massachusetts for $420,000. To purchase the property, the defendant obtained a

mortgage of approximately $315,000. In addition, the defendant paid a deposit of $21,000, and made a further payment of approximately $90,978 on or before October 24, 2016 in order to close on the real estate purchase.

20. For each of the above-referenced nine purchases of real property, the defendant delivered the initial deposit to the closing attorney, often several months prior to closing. That money was held in escrow until the closing date. Then, at the closing, the defendant provided additional funds for the purpose of completing the purchase. The funds paid to the closing attorney and, subsequently, at the closing consisted of proceeds of the defendant's unlawful manufacture and sale of controlled substances.

21. Between April 2014 and October 2016, the defendant paid contractors approximately $165,000 for renovation work done on the properties he owned at 50 Gibbs Street, 193 Hamilton Street, 119 Heywood Street, 56 Copperfield Street and 166 Shrewsbury Street. The defendant made all of those payments in cash, which consisted of proceeds of the unlawful manufacture and sale of controlled substances.

### Payment of Loan for 119 Heywood Street Purchase

22. On or about July 25, 2014, Ryanna, LLC ("Ryanna") issued a loan to the defendant in the amount of $120,000 for the purpose of financing the defendant's purchase of 119 Heywood Street, Worcester, Massachusetts. *See* ¶ 13, *supra*. That real estate purchase closed on July 28, 2014. Within two weeks of that closing, the defendant delivered $50,000 in cash to the principal of Ryanna.

23. Over the next five months, between approximately August 1, 2014 and December 12, 2014, the defendant made seven payments to Ryanna of $10,000 each. The seven payments

were each in the form of multiple money orders purchased at United States Postal Service or Western Union locations.

24. Although multiple money orders were frequently purchased on the same day, no single transaction exceeded $2,500 at any given location. By way of example, on August 25, 2014, the defendant purchased, or caused to be purchased, three money orders (totaling $2,500) at each of four different United States Postal Service locations in Shrewsbury and Worcester. The defendant then delivered or caused to be delivered to Ryanna the twelve money orders, totaling $10,000, on or about August 27, 2014. The defendant repeated that same pattern of money order purchases and delivery to Ryanna on or about August 4, 2014, September 8, 2014, September 30, 2014, October 25, 2014, November 14, 2014, and December 8-10, 2014. In total, the defendant purchased 108 money orders at over 12 locations for the purpose of making structured payments to Ryanna on the Heywood Street loan.

### Payment of Loan for 56 Copperfield Road Purchase

25. On or about February 12, 2016, Ryanna issued a loan to Secondwind in the amount of $60,000 for the purpose of financing Secondwind's purchase of 56 Copperfield Road, Worcester, Massachusetts. The defendant signed the loan document as manager of Secondwind. That real estate purchase closed on February 16, 2016. *See* ¶14, *supra*.

26. Over the next five months, the defendant made six installment payments to Ryanna of $10,000 each. The installment payments were each in the form of multiple money orders purchased at various United States Postal Service or Western Union locations.

27. Although multiple money orders were frequently purchased on the same day, no single transaction exceeded $2,500. By way of example, on April 11, 2016, the defendant either purchased, or caused to be purchased, fourteen (14) money orders totaling $10,000. Those

6

included: five money orders totaling $2,500 from Western Union in Westborough, Massachusetts; three money orders totaling $2,500 from Western Union in Shrewsbury, Massachusetts; three money orders totaling $2,500 in one transaction from Western Union in Worcester, Massachusetts; and, three additional money orders totaling $2,500 in a separate transaction at the same Western Union in Worcester, Massachusetts. The defendant delivered the fourteen money orders totaling $10,000 to Ryanna on or about April 12, 2016. The defendant repeated that same pattern of money order purchases and delivery to Ryanna on or about March 8, 2016, May 20, 2016, June 11, 2016, July 6, 2016 and July 27, 2016. In total, the defendant purchased more than 60 money orders at over 10 locations for purpose of making structured payments to Ryanna on the Copperfield Road loan.

### Payments for Defendant's Wedding

28.     The defendant and his wife were married in August 2015 in Newport, Rhode Island.

29.     Between approximately August 13, 2014 and February 24, 2015, the defendant purchased, or caused to be purchased, 69 money orders with a total value of $48,000. The money orders were purchased from various United States Postal Service and Western Union locations in the same manner described in paragraphs 22-27 above, with no single transaction exceeding $2,500. The money orders were delivered to the Newport Hyatt Regency Hotel for payment of wedding expenses in seven installments, on or about: August 20, 2014 (six money orders totaling $5,000); September 8, 2014 (six money orders totaling $3,000); September 18, 2014 (six money orders totaling $5,000); September 25, 2014 (twelve money orders totaling $10,000); November 18, 2014 (sixteen money orders totaling $10,000); December 24, 2014 (eighteen money orders totaling $10,000) and March 4, 2015 (5 money orders totaling $5,000).

### Allegations Relevant to Defendant's False Statement on a Loan Application – 30 Abington Street and 193 Hamilton Street

30. On November 21, 2013, the defendant submitted a Uniform Residential Loan Application to Envoy Mortgage of Houston, Texas for a loan in the amount of $142,500 to finance his intended purchase of 30 Abington Street in Worcester, Massachusetts. In the application, the defendant falsely claimed an ownership interest in funds deposited in a Rockland Trust account ("Account x8987") that was maintained by John Doe #1.

31. On or about November 25, 2013, the defendant caused a letter to be faxed, allegedly from John Doe #1, to Envoy Mortgage in which John Doe #1 purportedly represented that the defendant had "full access to the funds in [Account x8987] for the purpose of purchasing a home." That letter was false in that it was not authorized by John Doe #1 and the defendant had no ownership interest in the funds maintained in Account x8987.

32. In addition, the defendant submitted a monthly statement for Account x8987 for the period ending November 7, 2013 to Envoy Mortgage. That statement included the defendant's name as an account holder, in addition to John Doe #1. That statement was false in that the defendant was not an account holder authorized to use Account x8987.

33. On or about December 13, 2013, in response to a request by Envoy Mortgage to substantiate certain deposits into Account x8987, the defendant submitted a letter to Envoy Mortgage in which he falsely represented the source of a $10,000 deposit into Account x8987 on November 4, 2013. In addition to this letter, the defendant provided Envoy Mortgage with fabricated documents in support of his claim, including a fabricated invoice for services, and a forged check (in the amount of $10,000) for payment of those services.

34. Although Envoy approved the loan application for the defendant's purchase of 30 Abington Street, the defendant withdrew his request because of an alleged problem with the

property. Instead, a Uniform Residential Loan Application was resubmitted to Envoy Mortgage on or about February 26, 2014 for the purpose of purchasing 193 Hamilton Street, Worcester. That application again listed the funds maintained in the Rockland Trust Account x8987 as an asset. Envoy Mortgage approved the application on or about April 7, 2014 in the amount of $154,605. The defendant purchased 193 Hamilton Street on April 14, 2014. *See* ¶ 12, *supra.*

## COUNTS ONE THROUGH NINE
### (18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering)

35. The Grand Jury re-alleges and incorporates by reference paragraphs 1-29 of this Indictment and further charges that, on the dates listed below, in the District of Massachusetts,

### KEVIN A. PERRY, JR.,

defendant herein, did knowingly conduct, and attempt to conduct, a financial transaction affecting interstate and foreign commerce, and that is the transfer of title to any real property as set forth below, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and which transaction in fact involved the proceeds of a specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, each such instance being a separate Count of this Indictment as set forth below:

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 1 | On or before June 4, 2012 | The payment of approximately $75,560 in cashier's checks and other monetary instruments for the purchase of 38 Woodford Street, Worcester, Massachusetts |
| 2 | On or before October 11, 2013 | The payment of approximately $23,551 in cashier's checks and other monetary instruments for the purchase of 50 Gibbs Street, Unit 6, Worcester, Massachusetts |
| 3 | On or before October 11, 2013 | The payment of approximately $7,787 in cashier's checks and other monetary instruments for the purchase of 25 Andover Street, Unit S-1, Worcester, Massachusetts |
| 4 | On or before April 14, 2014 | The payment of approximately $53,329 in cashier's checks and other monetary instruments for the purchase of 193 Hamilton Street, Worcester, Massachusetts |
| 5 | On or before July 28, 2014 | The payment of approximately $53,329 in cashier's checks and other monetary instruments for the purchase of 119 Heywood Street, Worcester, Massachusetts |

| 6 | On or before February 16, 2016 | The payment of approximately $42,073 in cashier's checks and other monetary instruments for the purchase of 56 Copperfield Road, Worcester, Massachusetts |
|---|---|---|
| 7 | On or before February 19, 2016 | The payment of approximately $102,902 in cashier's checks and other monetary instruments for the purchase of 104 McCracken Road, Millbury, Massachusetts |
| 8 | On or before September 19, 2016 | The payment of approximately $130,075 in cashier's checks and other monetary instruments for the purchase of 166 Shrewsbury Street, Worcester, Massachusetts |
| 9 | On or before October 24, 2016 | The payment of approximately $111,978 in cashier's checks and other monetary instruments for the purchase of 81 Water Street, Worcester, Massachusetts |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(1).

## COUNTS TEN THROUGH TWELVE
### (31 U.S.C. § 5324(a) – Unlawful Cash Structuring)

36.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-29 of this Indictment and further charges that, on the dates listed below, in the District of Massachusetts,

### KEVIN A. PERRY, JR.,

defendant herein, knowingly and for the purpose of evading the reporting requirements of section 5325 of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause a domestic financial institution, to wit: the United States Postal Service and Western Union, as set forth below, to fail to file a report required under section 5325 of Title 31, United States Code, and any regulation prescribed thereunder, and did so as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period:

| Count | Approximate Date | Activity |
| --- | --- | --- |
| 10 | August 25, 2014 | The purchase of 12 money orders, totaling $10,000, from four locations of the United States Postal Service |
| 11 | September 11, 2014 | The purchase of 6 money orders, totaling $5,000 from two locations of the United States Postal Service |
| 12 | April 11, 2016 | The purchase of 14 money orders, totaling $10,000 from four locations of Western Union |

All in violation of Title 31, United States Code, Sections 5324(a)(1) and (d)(2), and Title 18, United States Code, Section 2.

## COUNT THIRTEEN
### (18 U.S.C. § 1014 – False Statement on a Loan Application)

37. The Grand Jury re-alleges and incorporates by reference paragraphs 12 and 30-34 of this Indictment and further charges that on or about November 21, 2013, in the District of Massachusetts,

**KEVIN A. PERRY, JR.,**

defendant herein, knowingly made a false statement and report for the purpose of influencing in any way the action of a mortgage lending business, to wit, Envoy Mortgage, in connection with a Uniform Residential Loan Application, in that the defendant asserted an ownership interest in funds maintained in a Rockland Trust bank account, when in truth and in fact, as the defendant well knew, the defendant maintained no interest in the funds.

All in violation of Title 18, United States Code, Section 1014.

## COUNT FOURTEEN
### (21 U.S.C. § 841(a)(1) and (b)(1)(A)(iv) – Distribution of Fentanyl)

38.  The Grand Jury further charges that on or about February 23, 2017, at Worcester in the District of Massachusetts,

**KEVIN A. PERRY, JR.,**

defendant herein, did knowingly and intentionally distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (also known as fentanyl), a Schedule II controlled substance,

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

## MONEY LAUNDERING FORFEITURE ALLEGATIONS
## (18 U.S.C. § 982(a)(1))

The Grand Jury further finds probable cause to believe that:

39. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1956, set forth in Counts One through Nine of this Indictment,

**KEVIN A. PERRY, JR.**

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes but is not limited to, the following:

   a. Real property located at 38 Woodford Street, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 49704, Page 165;

   b. Real property located at 50 Gibbs Street, Unit 6, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a condominium unit deed recorded at the Worcester County Registry of Deeds, Book 51620, Page 378;

   c. Real property located at 25 Andover Street, Unit S-1, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a condominium unit deed recorded at the Worcester County Registry of Deeds, Book 51621, Page 3;

   d. Real property located at 193 Hamilton Street, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 52215, Page 191;

   e. Real property located at 119 Heywood Street, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 52604, Page 374;

   f. Real property located at 56 Copperfield Road, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more

    particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 54944, Page 259;

  g. Real property located at 104 McCracken Road, Millbury, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 54961, Page 151;

  h. Real property located at 166 Shrewsbury Street, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 55977, Page 82;

  i. Real property located at 81 Water Street, Worcester, Massachusetts, including all buildings, improvements and appurtenances thereon, more particularly described in a quitclaim deed recorded at the Worcester County Registry of Deeds, Book 56183, Page 52; and

  j. A sum of money equal to the proceeds obtained as a result of the offenses, which may be entered in the form of a forfeiture money judgment up to approximately $2,475,140.

40. If any of the property described in Paragraph 39, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred to, sold to, or deposited with a third party;

  c. has been placed beyond the jurisdiction of this Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 39.

 All pursuant to Title 18, United States Code, Section 982(a)(1).

## **DRUG FORFEITURE ALLEGATION**
### (21 U.S.C. § 853)

The Grand Jury further finds probable cause to believe that:

41. Upon conviction of one or more of the offenses in violation of Title 21, United States Code, Section 841, set forth in Count Fourteen of this Indictment,

### **KEVIN A. PERRY, JR.,**

defendant herein, shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of such offense; and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

42. If any of the property described in Paragraph 41, above, as being forfeitable pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendant -

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 41 above.

All pursuant to Title 21, United States Code, Section 853.

## STRUCTURING FORFEITURE ALLEGATION
## (31 U.S.C. § 5317(c)(1))

The Grand Jury further finds probable cause to believe that:

43. Upon conviction of one or more of the offenses in violation of Title 31, United States Code, Section 5324, set forth in Counts Ten through Twelve of this Indictment,

**KEVIN A. PERRY, JR.,**

defendant herein, shall forfeit to the United States, pursuant to Title 31, United States Code, 5317(c), all property, real or personal, involved in the offenses and any property traceable thereto.

44. If any of the property described in Paragraph 43, above, as being forfeitable pursuant to Title 31, United States Code, Section 5317(c)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 43.

All pursuant to Title 31, United States Code, Section 5317(c)(1).

## FALSE STATEMENT FORFEITURE ALLEGATIONS
## (18 U.S.C. § 982(a)(2))

The Grand Jury further finds probable cause to believe that:

45. Upon conviction of the offense in violation of Title 18, United States Code, Section 1014, set forth in Count Thirteen of this Indictment,

**KEVIN A. PERRY, JR.**

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), any property, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such offense.

46. If any of the property described in Paragraph 45, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 45.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
GREG A. FRIEDHOLM
ASSISTANT UNITED STATES ATTORNEY

DISTRICT OF MASSACHUSETTS;

Dated: March 16, 2017

Returned into the District Court by the Grand Jurors and filed.

_____ 3/16/17
DEPUTY CLERK
1:12pm