THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | 17CR40010 |
| KEVIN A. PERRY, JR. | ) | |
| | ) | |

**<u>DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE</u>**

***Procedural History***

The Defendant Kevin Perry ("Perry") moved for a reduction of his sentence of 168 months incarceration pursuant to U.S.C. §3582(c)(1)(A) on April 27, 2020 (*Dkt. No. 232)*.  On May 8, 2020, his motion was denied by this Court, in which denial the Court acknowledged that Perry suffers from various medical conditions that put him at "increased risk for serious illness or death if he contracts the virus" (*Dkt. No. 238*).  However, the Court found that Perry's continued incarceration at FMC Devens did not expose him to significant risk of exposure as there were no active cases of Covid-19 at the facility at that time.[1]  The Court did, however, enter the order without prejudice to renew "should there be a change in circumstances."  *Id.*   Indeed, subsequent to the Court's May 8, 2020 decision above, there was a significant change in circumstances at FMC Devens, in that ten inmates and two staffers suffered from Covid-19 infections, including Perry's cell-mate.  Accordingly, on May 18, 2020, Perry filed a Renewed Motion for Reduction of Sentence (*Dkt. No. 240)*, and supplemented that Motion on May 29, 2020 (*Dkt. No. 243)* to report a quadrupling of the number of inmates and staff infected at that time, arguing that clearly the Bureau of Prisons was not, as stated by the Court in denying Perry's initial motion, taking every precaution to protect inmates.  Perry again supplemented his renewed Motion by filing a *pro se* letter with the Court to further update the number of infections at FMC

---

1   The Court also found it "significant" that Perry had only served approximately 25% of his sentence and that he committed the acts for which he is presently incarcerated while on supervised release for "similar drug related conduct."  *See Dkt. No. 238.*

Devens that had risen to 43 inmates and 4 staffers *(Dkt. No. 245)*.  On June 11, 2020, this Court once again denied Perry's renewed request for release in an electronic order without entering a statement of reasons for the denial *(Dkt. No. 246)*.

On August 7, 2020, filing *pro se,* Perry wrote to this Court to inform that he had been transferred to FPC Berlin and as a result of Covid-based quarantines, had to date spent 71 days in quarantine.  Perry once again requested that the Court grant him compassionate release.  In addition to his request for compassionate release, Perry also filed a *pro se* request for Rulings of Law on his renewed motions for release *(Dkt. No. 251)*.[2]  On September 9, 2020, this Court once again denied Perry's Motion for Reconsideration and Request for Rulings of Law in an electronic order with no further explanation of the Court's reasoning.  *(Dkt. No. 252)*.

Undeterred in his effort to convince this Court of the grave danger he faced by continued incarceration, Perry again pleaded with the Court on October 19, 2020, arguing that there did indeed exist "extraordinary and compelling" reasons to allow his Motion for Compassionate Release.  In support thereof, Perry set forth the undeniable change in conditions in that he himself had become infected with Covid-19, and once again reiterated his increased risks for complications or death due to chronic underlying medical conditions.  Perry describes the treatment (or lack thereof) that he received from the facility as he battled the infection in his contemporaneous "Quarantine Notes" (filed under seal as Exhibit 1).  As evidenced in the attached medical records (filed under seal as Exhibit 2), he had a slight fever, but had a racing heart rate (115-120 bpm) for three days, a migraine headache during the entire almost two week period he was sick, he was vomiting, had lung and stomach pain, constipation, and the inability to eat or drink.  He had to be medicated with tylenol with codeine for the pain and injections to stop the vomiting.  Perry now states that he is suffering from lingering effects of having been infected with the coronavirus, to include such symptoms as periodic, lingering headaches, having

---

2   Perry stated that the *pro se* filings were the result of his being kept in quarantine with no access to his attorney or any outsiders.

memory loss and just not feeling "like himself." *See*

*https://www.vox.com/platform/amp/22166236/long-term-side-effects-covid-19-symptoms-heart-fatigue.*

Additionally, in his October 19, 2020 filing, Perry also noted that as a result of BOP measures with respect to coronavirus mitigation, he had already spent approximately 30% of the last year in isolation, further deteriorating his mental and physical well-being (*Dkt. No. 256).* Finally, on November 10, 2020, this Court once again denied Perry's Motions for Reconsideration re Compassionate Release in a written Order (*Dkt. No. 258)* in which the Court acknowledged the change in circumstances - Perry's actually being infected with the coronavirus – but the Court nevertheless once again denied Perry's motion, finding that his case did not present extraordinary and compelling reasons to modify his sentence based on that facts that (a) Perry has only served approximately 30% of his sentence and (b) he committed the offense for which he is presently incarcerated while on supervised release on a prior drug crime. Again, the Court entered the order "without prejudice to the filing of a further motion should there be a change in his circumstances." *Id.* at 2.

### *Change in Circumstances since the Court's Denial of Mr. Perry's Motion for Compassionate Release*

This Court's November 10, 2020 denial of Perry's Second Emergency Motion for Reconsideration once again left the door open to Perry's filing of a further motion "should there be a change in his circumstances." Insofar as Perry has already contracted the coronavirus while in federal custody, one can only wonder what further "change in circumstances" would sway the Court to grant his Motion. Would Perry have to be on a ventilator, gasping for air as a result of a reinfection before this Court chooses to act? Will Perry face the same outcome as the defendant mentioned by the court in *United States v. Armstrong,* 2020 U.S. Dist. LEXIS 135313, 2020 WL 4366015, at *3 (S.D.CA. July 30, 2020),where an inmate who had been pronounced "recovered" by the BOP was again hospitalized and died subsequent to his so-called "recovery"?

Perry once again argues that a change in circumstances, to wit: his potential for reinfection and his having been confined in solitary quarantine for upwards of 100 days in 2020, along with all of the other factors set forth in his previous filings should compel this Court to order his release to home confinement for the remainder of his sentence.   This Court acknowledged that Perry suffers from chronic medical issues that put him at risk from infection with the coronavirus.   Science is telling us that even those who have been declared "recovered" from the virus still face the possibility of reinfection.[3]   The nature of the living conditions while incarcerated makes it nearly impossible to practice safe social distancing and to maintain the kind of hygiene necessary to stop the spread of the disease.   While the BOP is presumably doing what it can to protect both inmates and staff, the number of Covid infections that have swept through its institutions is alarming, as the percentage of incarcerated individuals contracting the virus is far in excess of that of the general public.   *See, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prison*.   The statistics within the BOP, as in the general United States population, changes daily, with surges occurring all over the country.   *See The Marshall Project, id.*

A review of recent case law addressing claims from inmates seeking compassionate release even after having "recovered" from the coronavirus demonstrates that courts are divided on whether compassionate release is warranted after a defendant has "recovered" from a Covid-19 infection.   In *Armstrong, supra* the court opted to "err on the side of caution to avoid potentially lethal consequences for [defendant]" because "simply announcing that an inmate has 'recovered' does not mean [defendant] is completely safe from the virus."   Similarly, in *United States v. Fernandez,* 2020 U.S. Dist. LEXIS 185485, 2020 WL 5909490 (E.D.CA.  October 6, 2020), the court granted the defendant's motion for compassionate release based on the facts that "[defendant] . . . who was previously infected with the coronavirus, suffers from asthma, chronic kidney disease, hypertension and of his high body mass index . . .".

---

3    https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html

On the other hand, the court in *United States v. Molley,* No. CR15-0254-JCC, 2020 U.S. Dist. LEXIS 114713, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020) stated that "releasing uninfected inmates mitigates the concrete risk of them getting infected, releasing [defendant] would reduce the risk of him getting reinfected.  That risk is . . . speculative."

Any request for compassionate release based on the ongoing risk of serious illness or death to incarcerated individuals is "speculative" - until it is not - as 155 federal inmates to date have already died from complications related to Covid-19, and upwards of 30,000 inmates and 4,000 BOP staff have contracted the virus. *See, https://www/bop.gov/coronavirus* (last accessed 12/16/2020).

As this Court knows, Perry suffers from chronic leukopenia (historically low white blood cell count), putting him at great risk of being unable to fight off infection.  Additionally, he suffers from other blood disorders - low neutrophils and lymphocytes, and hyperlipidemia. He also had been diagnosed with hepatitis C in the past (which was treated) and has been found to be positive for tuberculosis (for which he is closely monitored). *See* Medical Records, attached as **Exhibit 2** to Perry's initial Motion for Release.  COVID-19 has been associated with leukopenia, and the disease often drives the white blood cell counts, even in a healthy person, to dangerously low levels.[4] Lymphopenia has been associated with significantly worse outcomes for patients with COVID-19.[5]  Both tuberculosis and COVID-19 attach the respiratory system. Experts have suggested that people with both illnesses will experience poorer treatment outcomes.[6]

---

[4]    The Ohio State University Wexner Medical Center, *COVID-1: Inpatient Evaluation andMahttps://wexnermedical.osu.edu/-/media/files/wexnermedical/features/covid-resources/clinical-guidance/inpatient-clinical-care/inpatient-evaluation-and-management-guidelines-for-covid-19.pdf?la=en&hash=531EC 578D022F5BFC5BB31EA833120355AC27504nagement Guideline,* found at  (last visited April 23, 2020)

[5]    McIntosh, et al., *Coronavirus disease 2019 (COVID-19): Epidemiology, virology, clinical features, diagnosis, and prevention,* found at https://www.uptodate.com/contents/corona-virus-disease-2019-covid-19-epidemiology-virology-clinical-features-diagnosis-and-prevention (last visited April 23, 2020).

[6]    Pan American Health Organization, *Tuberculosis and COVID-19: What health works and authorities need to know,* found at https://www.paho.org/hq/index.php?option=com _content&view=article&id=15759:tuberculosis-and-covid-19-what-health-workers-and-authorities-need-to-know&Itemid=1926&lang=en (last visited April 23, 2020).

In addition to the factors set forth in Mr. Perry's earlier submissions,  there are additional factors that militate in favor of this Court's granting Perry's Motion that, while not specifically constituting a "change in circumstances," do rise to "extraordinary and compelling" reasons fort this Court to find that compassionate release does best serve the interests of justice in this matter.

As Perry noted in his submission of October 19, 2020, since the onset of the national emergency arising from the COVID-19 pandemic, he has spent approximately 100 days in isolation.  Isolation in the time of COVID consists of being kept in a locked cell 24 hours a day, without access to programs, recreation, showers (for some of the time) and communications with family or attorneys.

Moreover, this Court should take into consideration that since the start of the COVID-19 national emergency, the Bureau of Prisons necessarily suspended programming that would allow inmates to *both* take rehabilitation and retraining courses and to earn good time credit, thus making the time spent in federal custody harder, and longer, due to the lack of opportunity to earn good time credit.

The two above factors – time spent in solitary confinement and the inability to access important programs that will impact the actual length of time that Perry will be incarcerated, as well as the fact that the BOP failed to protect him – a member of a vulnerable subset of society due to his underlying medical issues, as well as his complaints of the now long-term effects of the coronavirus - are additional factors for this Court to consider in determining what, and what do not, constitute extraordinary and compelling circumstances.

Perry additionally asserts that the failure of the BOP to implement adequate safety measures to contain the spread of the coronavirus and to mitigate the risks of infection implicates the Eighth Amendment to the United States Constitution.   The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *U.S. Const., amend. VIII.*  Prison officials' "deliberate indifference to serious medical needs of prisoners"

has been held to violate the "cruel and unusual punishment clause of the Eighth Amendment".  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).   In order to establish an Eighth Amendment violation, a claimant must make a showing of an official's subjective indifference, by demonstrating that the official must "know[] of and disregard[] an excessive risk to inmate health or safety[]."  *Farmer v. United Brennan,* 511 U.S. 825, 837 (1994).  Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Id.* at 832.   Indeed, courts have long recognized that prison officials have an Eighth Amendment duty to protect inmates from exposure to communicable disease.  *See, e.g., Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir. 1996).

Here, it cannot be seriously argued that with the arrival of the Covid-19 pandemic earlier this year, the BOP has, in general, failed miserably in meeting this requirement.  Specifically with respect to Perry's claim herein, prison authorities certainly knew of, and disregarded excessive risks to Perry's health or safety by failing to mitigate the spread of the coronavirus throughout FPC Berlin.  Perry became infected while incarcerated at FPC Berlin.  His cell-mate became infected while incarcerated at FCI Devens.  The BOP's very statistics dramatically illustrate the lack of mitigation efforts to prevent the spread of this often deadly disease.  It should be noted that enduring the illness that the coronavirus infection inflicted on Perry while incarcerated is yet another factor to consider.  During the course of his almost two weeks battling the illness, Perry was kept isolated (as of course he should have been), but as a prisoner, he was cut off from communications with family, his attorney, and from the kind of medical attention that one might expect if they were ill in a non-custodial setting.

Finally, to address this Court's stated reasons for denying Perry's earlier motions for compassionte release – ie: that Perry committed the offense of conviction while on supervised release on a similar drug offense and that he has served less than 50% of his sentence, we argue that the fact that the Court's concerns about Perry's recidivism are, at this time in Perry's life, misplaced.  He is

approaching 50 years of age, and had, at least until the onset of the pandemic, taken seriously the rehabilitative and educational/training classes made available to him during his incarceration.  He has matured greatly, and has come to see that re-offending at this time in his life is something that he just won't do.  As he stressed in his initial compassionate release motion, his BOP PATTERN recidivism score is at the lowest possible level of "minimum."  If this Court were to order Perry's release to home confinement, as set forth in Perry's first motion for release (Dkt. No. 232), he would reside with his father, Kevin Perry, Sr., age 62 in Worcester, MA.  Since the time of Perry's initial filing, his father's health is failing, and he currently is suffering from a serious prostate infection and is awaiting results of testing to determine if he has cancer of the prostate.  Perry is his father's sole support system, and his presence in the home is needed now more than ever.

As to this Court's legitimate concern that Perry has served less than 50% of his prison sentence, that percentage does not take into account any potential good time credit he has and will eventually earn.  It also does not take into account the time at the end of his sentence that will be spent at a residential re-entry center.  Finally, Perry is hopeful that this Court will grant his 2255 Petition currently pending in the instant case, and that such a grant could decrease his sentence by approximately two years, bringing him up to or above having served 50% of his sentence.  Even without the possibility of an institutional or judicial decrease in his sentence, Perry points to numerous cases from around the country where compassionate release has been granted to prisoners who have served less than 50% of their sentences.  *See, e.g., United States v. Delgado,* 2020 WL 2464685, at *1, *4 (D. Conn.  Apr. 30, 2020) (granting compassionate release to defendant 29 months into 120 month sentence); *United States v. Winston,*  Case No. 1:13-cr-639-RDB, Dkt. No. 295 (D.Md. April 28, 2020) (granting compassionate release to defendant 36 months into 120 month sentence); *United States v. Loyd,*  No, CR 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (release after three years of ten year sentence); *United States v. Robinson,* 18-03042-04-CR-S-SRB (W.D. MO) (served

approximately 28 of his 132 month sentence); *United States v. Harrison,* 17-00264-01-CR-W-GAF

(W.D.MO.) (served approximately 23 of 112 month sentence).  Perry has been detained since March

20, 2017, for a total of approximately 46 months.

In sum, Perry, who has now suffered the reality of an infection with Covid-19, remains terrified

for his life should he once again be exposed to the virus and becomes reinfected.  We have amply

demonstrated that despite any efforts being made by the BOP to mitigate the spread of Covid-19,

infections and deaths are regularly occurring, and despite the seriousness of Perry's offenses of

conviction, they do not merit the imposition of a possible death sentence.

### CONCLUSION

Perry has amply demonstrated that there exist extraordinary and compelling reasons for this

Court to grant his request for compassionate release and that he should be ordered to spend the

remainder of his sentence in home confinement.

Accordingly, for all of the reasons set forth herein, as well as the reasons set forth in Perry's

previously filed Motions for Compassionate Release, we hereby respectfully submit that this Court

should order Perry's immediate release to home confinement.

Respectfully submitted,

*/s/   Lori H. Levinson*
Lori H. Levinson, Esq.
**The Law Office of Lori H. Levinson, PC**
500 Main Street, Suite 2
Great Barrington, MA  01230
(413) 528-2355
(413) 528-2315 (facsimile)

December 21, 2020

## CERTIFICATE OF SERVICE

I hereby certify that the above Renewed Motion for Compassionate Release filed through the

ECF system will be sent electronically and by first class mail to the registered participants as identified

on the Notice of Electronic Filing (NEF).


Respectfully submitted,

*/s/   Lori H. Levinson*
Lori H. Levinson, Esq.
**The Law Office of Lori H. Levinson, PC**
500 Main Street, Suite 2
Great Barrington, MA  01230
(413) 528-2355
(413) 528-23415 (Facsimile)

December 21, 2020