THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Dkt. No. |
| | ) 17CR40010 |
| | ) |
| -vs- | ) |
| | ) |
| KEVIN A. PERRY, JR., | ) |

**DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO HIS SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE**

The government opposes Kevin Perry's ("Perry") Supplemental Motion for Compassionate Release, arguing that he has "again" failed to meet his burden to demonstrate the "extraordinary and compelling reasons" necessary to justify this Court's allowing his Motion; that he remains a danger to the community and that he has demonstrated no change in circumstances to justify the Court's reconsideration of its previous orders denying the requested relief.

To the contrary, Perry has more than demonstrated that there are "extraordinary and compelling reasons" to justify his compassionate release, to wit:  he has underlying, chronic health conditions that make him vulnerable to dire consequences from potential reinfection with Covid-19; he has already suffered from infection with Covid-19, with significant serious symptoms, suffering in isolation and with no contact with the outside world, including his family and his attorney; he has spent over 100 days in isolation during the last year;  he cannot participate in recidivism reduction programming which would serve to reduce his time remaining on his sentence through good time credits[1]; and his father, who would rely on him for care if he were to be released, is awaiting a diagnosis relating to possible prostate cancer.

**1. Recent Change in Circumstances**

Contrary to the government's assertion that Perry's circumstances have not changed since this Court's November 10, 2020 order denying him compassionate release, at the time Perry filed his prior motion, he had only just begun experiencing symptoms of Covid-19, and had not yet gone through the

---

[1] The inability to participate in programming is not unique to Perry, but is happening throughout the BOP's facilites as part of their efforts to contain the spread of Covid-19.

terrifying experience of being alone and isolated, dealing with a rapid heartbeat for days, as well as nausea and vomiting necessitating injections to control the symptoms.

Secondly, since this Court's November 10 Order denying compassionate release, Perry's father has been suffering from prostate illness, and is awaiting a diagnosis that may reveal prostate cancer. As set forth in Perry Sr.'s letter to this Court, attached as Exhibit 1, and Perry Sr.'s medical records, attached at Exhibit 2 (Exhibits 1 and 2 and 6 and 7 are the subject of a contemporaneous Motion to Seal), he needs his son's assistance at home now more than ever.

Finally, Perry has been complaining of lingering symptoms from his infection with Covid-19, including what he refers to a "mental fog"; wheezing and gasping "more than normal"; and lingering headaches, as referenced in medical notes from health services at FPC Berlin, attached hereto as Exhibit 6 (the subject of contemporaneous Motion to Seal Exhibits). Perry has requested on several occasions that Health Services provide him with an inhaler to help with his wheezing and gasping, and yet, to date, he has not been provided with this necessary medication. This failure to the BOP to address serious health concerns also stands as a changed circumstance.

**2. There are extraordinary and compelling resons to warrant release**

Perry has amply demonstrated that his underlying medical conditions place him at a higher risk than a healthy individual of suffering severe consequences from infection with Covid-19. This was affirmed by the serious symptoms he exhibited when, as a result of the Bureau of Prison's ("BOP") failure to protect him, he became ill. The prospect of reinfection is terrifying for Perry and for his family. Moreover, as stated above, Perry's father is suffering from a serious illness and needs his son to come home to help care for him.

3. **Perry does not pose a danger to the community**

Perry does not, as repeatedly argued by the government, pose a danger to the community. Indeed, the BOP respectfully disagrees with the government, as demonstrated by his classification as a minimum risk for reoffending. *See,* Exhibit 3. Further, Perry has requested that this Court order his release from the custody of the BOP and to allow him to serve the remainder of his sentence on home confinement at his father's home, where Perry would serve as a caretaker for his ailing father, which would further assure that he would not commit any further crimes.

The government further argues that Worcester, the city of Perry's father's residence, is no less safe than FPC Berlin, because of the number of positive coronavirus cases in that city. Perry would not be out in the community, but would be at home serving his sentence. However, if the Court is truly

concerned that Worcester would not be a safe or appropriate setting for Perry's home confinement, he is welcome to reside with his aunt Cheryl Taber, 162 Dells Road, Littleton, New Hampshire.[2]

4. **Time remaining on sentence**

As to the amount of time remaining for Perry to serve on his sentence, the government incorrectly argues that the has served but 27% of his sentence to date.  In fact, if this Court were to factor in earned good time credit and time to be spent in a halfway house, as reflected on the Sentence Computation Data report attached hereto as Exhibit 4, Perry's projected release date to a half-way house is August 22, 2028, less than seven years away, representing approximately 50% of his sentence remaining.   Indeed, as argued in prior submissions and set forth again in greater detail, Perry's projected release date does not take into consideration earned good time credits as set forth at section 4(A)(i) and (ii) of the First Step Act of 2018, which permits inmates to earn 10 or 15 days of good time credit for 30 days of participation in evidence-based recidivism reduction programming or productive activities.  Since the beginning of the Covid-19 pandemic and resulting restrictions on programming within the BOP, Perry has been unable to participate in such programming, thereby loosing out on the opportunity to shorten his sentence.

5. **Section 3553(a) factors do not dictate against release**

The government argues that restructuring Perry's sentence to provide for home confinement rather than BOP incarceration would not "reflect the seriousness of the offense; would not promote respect for the law; would not provide just punishment for his conduct; would not afford adequate deterrence . . . ; would not protect the public from his future criminal conduct, and would not provide Perry with the treatment and counseling that he argued at sentencing that he desperately needed." Government Opposition at 5 – 6.

As already addressed above, the community would be protected, as Perry would be confined to his house for the remainder of his sentence.  As for the treatment and counseling that he needs, as evidenced in the letter from his therapist at Psychological Services at Devens Medical Center, where Perry was initially housed, (attached hereto as Exhibit 7, also subject to a contemporaneous Motion to Seal Exhibits), he had been making significant progress in opening and reflectiveness in therapy until the Covid-19 pandemic caused his therapist to terminate in-person sessions.  In closing, his therapist noted that she "believe[s] we accomplished most of our initial therapeutic goals around gaining insight and understanding."  Additionally, as reflected in Exhibit 5 attached hereto, Perry has participated in,

---

[2] Perry will be happy to share his aunt's contact information with the Probation Department if this Court believes that is a preferable release plan.

and benefited greatly from programming that he participated in prior to the pandemic cutting off access to programming.

Recognition of the seriousness of the offense and promoting respect for the law can easily be accomplished by this Court recognizing that a potential death sentence is not appropriate under any circumstances for Perry's crimes of conviction. An order to remain confined to one's home, while not as onerous as being housed in a federal prison, is not a simple slap on the wrist, and would be so considered by a public that has seen the devastation that Covid-19 has wreaked on our prison population.

Accordingly, for all of the foregoing reasons, Perry respectfully submits that he has met his burden of establishing that an order allowing his Motion for Compassionate Release should be entered forthwith.

Respectfully submitted,

/s/   Lori H. Levinson
Lori H. Levinson, Esq.
500 Main Street, Suite 2
Great Barrington, MA  01230
(413) 528-2355
(413) 528-23415 (Facsimile)

January 4, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that the Defendant's Reply to Government Opposition filed through the ECF system will be sent electronically and by first class mail to the registered participants as identified on the Notice of Electronic Filing (NEF).

        */s/   Lori H. Levinson*
        Lori H. Levinson, Esq.

*/s/   Lori H. Levinson*
Lori H. Levinson, Esq.